DOMENGEAUX, Judge.
The defendant, James Dennis Sanford, a/k/a James Kennedy, was charged by bill of information with the crime of armed robbery, in violation of La.R.S. 14:64. He pleaded not guilty, and, on September 12-15, 1983, he was tried before a twelve person jury and was found guilty. Pursuant to the habitual offender statute (La. R.S. 15:529.1), Sanford was sentenced to serve 99 years at hard labor in the custody of the Department of Corrections without benefit of parole, probation, or suspension of sentence.
FACTS
On March 4, 1983, the victim, Michael E. Savier, spent the evening drinking beer and playing pool in the LaBoucherie Lounge in Lake Charles. Savier had arrived at the tavern in the company of a friend, but, during the course of the evening the companion departed.
Shortly before closing time, an extremely inebriated Mr. Savier approached the defendant and Joseph Trahan and inquired as to whether they would transport him to a friend’s home. The three men left La-Boucherie in a white car which Trahan had borrowed earlier that evening from Davis Mott. Trahan testified that prior to their departure, the defendant confidentially stated to him that he wanted to “roll the guy” (i.e., the victim); Trahan stated that he thought the defendant was joking.
The testimony of Trahan and Savier are the only account of the events which transpired in the next few minutes. Trahan stated that the group drove for a few minutes and then came to a stop near the intersection of Westwood and Sallier Street where he exited the auto in order that he might answer an irresistible call of nature. When Trahan’s attention returned to the automobile, he saw that the defendant had pulled the victim from the car and was beating him about the face and head with a pistol. Trahan went to the passenger side of the auto and tried to pull the defendant away from the victim, but was unsuccessful, and returned to the car. He noticed the defendant rummaging through the victim’s pockets and taking his money. A short time later, the defendant returned to the car, placed the weapon on the floor board, and stated, “Damn, $6.00.”
Savier testified that because he was extremely intoxicated he did not remember driving around or the car stopping. He did remember telling the two men that they were nice to give him a ride, whereupon Trahan stated that he was “not doing it for free.” The next thing the victim remembered was being on the ground, attempting to" get up, being kicked in the face, and “the sound of my face crushing.”
The police were summoned to the crime scene by a resident who had witnessed the disturbance. Law enforcement officers Louis and Fontenot were among those who responded to the call. Fontenot found the victim walking along Sallier Street, severely beaten, irrational, and disoriented, and caused him to be transported to a hospital.
At the location where the beating occurred the officers witnessed a pool of blood and the victim’s personal belongings strewn upon the street. In the course of the investigation of the area a sample of the blood was taken.
Meanwhile, Trahan and the defendant drove the auto to a local drinkery, John’s Barn, where Trahan returned the car to Davis Mott.
Later that night or early the next day, Mott and a friend found a pistol in the auto which Mott had loaned to Trahan. The *7 pistol was turned over to the police department, and blood residue found on the pistol and the blood sample taken at the scene of the struggle were subsequently analyzed and found to be Type A.
Due to the severity of the beating the victim sustained, he was forced to remain in intensive care for three days, in the hospital for one month, and required five operations to repair injuries to his face.
The victim was unable to identify his assailants, but testified that a coat which he had worn that evening and which had contained approximately $70.00 at the beginning of the evening was missing.
Prior to trial, Trahan confessed to being the co-perpetrator of the crime with the defendant. Defendant presented no evidence on his behalf and was found guilty of armed robbery.
Upon this appeal defendant has presented for review five assignments of error. The errors alleged to have been committed are as follows:
1. The trial court erred in denying defendant’s motion for a continuance since defendant informed his counsel ■ of his refusal to cooperate and assist in his defense.
2. The trial court erred in not granting defendant’s motion for a new trial since the evidence was insufficient to show that the essential elements of armed robbery were present.
3. The trial court erred in denying defendant’s motion for a new trial since the defendant discovered subsequent to the guilty verdict that the key witness, Joe Trahan, perjured himself at the trial, and notwithstanding the exercise of reasonable diligence, this defect was not discoverable prior to the verdict.
4. The trial court erred in allowing into evidence photographs of the victim, since the photographs were excessively prejudicial and gruesome, serving only to inflame the jury, and having little or no probative value.
5.The trial court erred in allowing into evidence a weapon, namely a pistol, in that the weapon was not adequately linked to the commission of the offense.
ASSIGNMENT OF ERROR NO. 1:
The defendant contends that the trial court erred in denying his motion for a continuance since the defendant informed his counsel of his refusal to cooperate and assist in his defense.
Although the defendant lists this assignment of error in his brief we cannot find any argument in support of the allegation that the trial court was in error. As the assignment of error was apparently neither briefed nor argued it is considered abandoned. State v. Dewey, 408 So.2d 1255 (La.1982); and State v. Carlisle, 315 So.2d 675 (La.1975).
ASSIGNMENT OF ERROR NO. 2:
By this assignment, the defendant alleges that the trial court erred in not granting his motion for a new trial since the evidence was insufficient to show that the essential elements of armed robbery were present, viz., that a dangerous weapon was used in the commission of the offense, and that anything of value was taken from the victim.[1]
An appellate standard of review of the sufficiency of the evidence was set forth in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), and has been adopted by the Louisiana Supreme Court. In State v. Sharp, 414 So.2d 752 (La.1982), our Supreme Court stated:
“In order for a conviction to stand, the evidence, when viewed in a light most favorable to the prosecution, must be sufficient to convince a reasonable trier of fact of the guilt of the defendant, *8 beyond a reasonable doubt, of every element of the crime.” (Citation omitted).[2]
According to our High Court, this standard of review should be applied by the courts in their appellate review to determine whether the trial court abused its discretion in denying a motion for a new trial when the defendant contends on appeal that the verdict was contrary to the law and evidence. State v. West, 419 So.2d 868 (La.1982); and State v. Powell, 438 So.2d 1306 (La.App. 3rd Cir.1983), writ denied, 443 So.2d 585 (La.1983).
The defendant is charged with the armed robbery of Michael E. Savier, in violation of La.R.S. 14:64. La.R.S. 14:64 provides in pertinent part:
“Armed robbery is the taking of anything of value belonging to another, from the person of another, or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon.”
In order to convict the defendant, the State was required to prove beyond a reasonable doubt every element of La.R.S. 14:64. The elements of the crime of armed robbery are set forth as follows:
(1) The defendant must have committed a taking of anything of value belonging to another;
(2) The thing of value must have been in the possession or immediate control of the victim;
(3) That when the taking occurred, the defendant used force or intimidation against the victim in order to accomplish the taking; and
(4) That the defendant was armed with a dangerous weapon.
The defendant contends that the State failed to present sufficient evidence to prove that anything of value was taken from the victim or that the defendant used the dangerous weapon in the commission of the crime.
The phrase “anything of value” has been defined in La.R.S. 14:2(2), which states:
“(2) ‘Anything of value’ must be given the broadest possible construction, including any conceivable thing of the slightest value, movable or immovable, corporeal or incorporeal, public or private, and including transportation, telephone and telegraph services, or any other service available for hire. It must be construed in the broad popular sense of the phrase, not necessarily as synonymous with the traditional legal term ‘property.’ In all cases involving shoplifting the term ‘value’ is the actual retail price of the property at the time of the offense.”
Testimony reveals that Trahan saw the defendant rummaging through the victim’s pockets. When the defendant returned to the car, he stated “damn, $6.00.” When the victim awoke in the hospital, he found that his money was gone, although he was unable to account for the reason it was gone. Thus, the evidence was present in the record showing that the defendant took cash from the victim’s pockets. When viewed in a light most favorable to the prosecution, this evidence shows beyond a reasonable doubt that the defendant took a thing of value from the victim.
La.R.S. 14:2(3) defines the term “dangerous weapon” as follows:
“(3) ‘dangerous weapon’ includes any gas, liquid or other substance or instrumentality, which, in the manner used, is calculated or likely to produce death or great bodily harm.”
Joseph Trahan, who admitted being the co-perpetrator of the offense, testified at the defendant’s trial that he observed the defendant using a pistol to beat the victim. Trahan later returned the white car used at *9 the time of the offense to its owner, Davis Mott. Subsequently, Mott and his roommate, Sherwin Pike, found a pistol in the car which was caked with blood. Pike washed the pistol, which did not belong to either himself or to Mott, and later turned it over to law enforcement officers. Blood samples taken from the pistol were compared to samples taken from a pool of blood found at the scene of the beating, both being found to be Type A blood by the Southwest Louisiana Criminalistics Laboratory, albeit that 40% of the population has Type A blood.
In sum, the evidence, when viewed in a light most favorable to the prosecution, is sufficient to show beyond a reasonable doubt that a dangerous weapon was used in the commission of the offense.
This assignment of error lacks merit.
ASSIGNMENT OF ERROR NO. 3:
The defendant contends that the trial court erred in denying his motion for a new trial since the defendant discovered subsequent to the guilty verdict that the key witness (namely, Joe Trahan) perjured himself at the trial, and that notwithstanding the exercise of reasonable diligence, this defect was not discoverable prior to the verdict.
In State v. Cobb, 419 So.2d 1237 (La.1982), the Louisiana Supreme Court held:
“The motion for a new trial rests upon the supposition that some injustice has been done, therefore it is incumbent upon the mover to show that this is the case. C.Cr.P. Art. 851. See: State v. Coleman, 390 So.2d 865 (La.1980). The trial court is granted much discretion in evaluating the impact of newly discovered evidence and its ruling will not be disturbed, absent a clear abuse of discretion. State v. Spell, 399 So.2d 551 (La.1981). In considering a motion for a new trial based upon newly discovered evidence, the test to be employed by the trial court is whether the newly discovered evidence is so material as to warrant a different result than that which was reached in the original proceeding. State v. Miles, 402 So.2d 644 (La.1981); State v. Motton, 395 So.2d 1337 (La.1981).”
Aside from the defendant’s general allegation of perjury, he does not specifically allege how Trahan perjured himself. The defendant has not recited the nature of the new evidence which he contends is so material as to change the verdict against him. Where a defendant does not recite the nature of the new evidence, he fails to meet his burden of proving that injustice has been done or that the trial court abused its discretion in denying his motion for a new trial. The defendant in this case has failed to meet his burden of proof.
This assignment of error lacks merit.
ASSIGNMENT OF ERROR NO. 4:
In this assignment of error the defendant argues that the trial court erred in allowing into evidence photographs of the victim, since the photographs were excessively prejudicial and gruesome, serving only to inflame the jury, and having little or no probative value.
To be admissible, evidence must be relevant to a material issue. La.R.S. 15:435. Relevant evidence is that tending to show the commission of the offense and the intent, or tending to negate commission of the offense and the intent. La.R.S. 15:441. The Court must however, distinguish between evidence which is legally relevant and that which is logically relevant.
Logically relevant evidence is evidence which has a logical, perspicuous, or rational connection between the fact which is sought to be proved and the fact which is at issue in the case.
Legally relevant evidence is that evidence which is logically relevant but which does not unduly arouse jury prejudice or hostility, create a collateral issue that would distract the jury, delay the trial, or cause unfair surprise. State v. Brown, 395 So.2d 1301 (La.1981).
Only legally relevant evidence should be admissible at trial. The crux of defendant’s argument is that the photographs are not legally relevant.
*10 “The general rule is that the trial jury is entitled to view photographic evidence introduced during the trial. In its fact-finding and guilt determination function, it is entitled to the benefit of all the evidence.” State v. James, 339 So.2d 741 (La.1976).
However, it is equally well settled that photographs which are of an unduly prejudicial nature are not legally relevant and thus not admissible into evidence. The test for admissibility of allegedly gruesome photographs is whether their probative value outweighs any prejudicial effect. A trial court’s ruling in this regard will be disturbed only if the prejudicial effect of the photographs clearly outweighs the probative value. (Emphasis by this Court). State v. Boyer, 406 So.2d 143 (La.1981); and State v. Harvin, 437 So.2d 983 (La.App. 3rd Cir.1983).
Photographs which illustrate any fact, shed light upon any fact at issue in the case, or that are relevant to describe the person, place, or thing depicted are generally admissible. State v. Boyer, supra; State v. Lindsey, 404 So.2d 466 (La.1981), cert. denied, - U.S. -, 104 S.Ct. 261, 78 L.Ed.2d 246 (1983).
The photographs at issue depict the victim one week after the armed robbery occurred.
In this case, the State was required to prove that the defendant used force or intimidation during the taking. La.R.S. 14:64; State v. Robinson, 353 So.2d 1001 (La.1977); State v. Redwine, 337 So.2d 1041 (La.1976). The victim testified that he remembered being kicked in the face and the sound of his face crushing. The victim, however, had previously testified that he was intoxicated at the time of the offense. The introduction of these photographs into evidence merely corroborated the victim’s testimony regarding the force used against him. See State v. Berain, 360 So.2d 822 (La.1978).
For these reasons, the photographs are relevant to a material issue, i.e., the use of force or intimidation against the victim, and are of highly probative value. The probative value of these photographs outweigh any prejudicial effect they may have. State v. Boyer, supra; State v. Harvin, supra.
This assignment of error lacks merit.
ASSIGNMENT OF ERROR NO. 5:
The defendant contends that the trial court erred in allowing into evidence a weapon, namely a pistol, in that the weapon was not adequately linked to the commission of the offense.
In State v. Tauzier, 397 So.2d 494 (La.1981), the Court stated:
“For demonstrative evidence to be admissible at trial, the State has the burden of establishing that it is more probable than not that the evidence is connected with the offense. State v. Boyd, 359 So.2d 931 (La.1978). This probability may be established by visual identification of a witness or by showing a chain of custody. Ultimately, the connexity of physical evidence is a factual matter for determination by the jury. State v. Henderson, 337 So.2d 204 (La.1976).”
At trial, the victim testified that he remembered leaving a bar with two white males in a white car and that he was subsequently beaten. Ronald Lewis testified to the fact that he recovered a pistol that was developed as a weapon used in the commission of the offense. Mr. Mott testified that Trahan borrowed his car on the night of the offense and after Trahan had returned the car to him, Mr. Mott noticed a pistol laying on the passenger floor. Mr. Mott testified that the gun was not in the car when he loaned the vehicle to Trahan earlier in the evening. Mr. Mott stated that he gave the gun to Mr. Pike, who brought it inside his apartment. Officer Fontenot testified that he was present when the pistol was seized from Mr. Pike’s apartment.
Based upon the foregoing testimony, the State established that it was more probable than not that the evidence was connected with the offense. Note again that the connexity of physical evidence is a factual matter left to the deter *11 mination of the jury. State v. Tauzier, supra.
In this ease, the pistol was relevant to show that the defendant was armed during the commission of the offense, thereby, proving an essential element of La.R.S. 14:64.
This assignment of error lacks merit.
For the above and foregoing reasons, the conviction and sentence of the district court are affirmed.
AFFIRMED.

. Cf. La.C.Cr.P. Art. 851(1), La.R.S. 14:64.

. Although reviewing courts are obliged to follow the Jackson standard as mandated by the Louisiana Supreme Court, the author of this opinion has expressed opposition to this standard because it relegates the reviewing power of the appellate courts to nothing more than "see-ond guessing” the triers of fact. See State v. Gatson, 434 So.2d 1315 (La.App. 3rd Cir.1983), concurring opinion at 1321, and State v. Anderson, 440 So.2d 205 (La.App. 3rd Cir.1983), concurring opinion at 223, writ denied, 444 So.2d 1241 (La.1984).