# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 17-588

**STATE OF LOUISIANA**

**VERSUS**

**ASAHEL HARVIN**

************

APPEAL FROM THE
THIRTIETH JUDICIAL DISTRICT COURT
PARISH OF VERNON, NO. 36664
HONORABLE C. ANTHONY EAVES, DISTRICT JUDGE

************
## SYLVIA R. COOKS
## JUDGE
************

Court composed of Sylvia R. Cooks, John D. Saunders and Candyce G. Perret, Judges.

**AFFIRMED.**

**Asa A. Skinner**
**District Attorney, Thirtieth Judicial District**
**Terry W. Lambright**
**First Assistant District Attorney, Thirtieth Judicial District**
**P. O. Box 1188**
**Leesville, LA 71446**
**(337) 239-2008**
**COUNSEL FOR APPELLEE:**
       **State of Louisiana**

**Katherine M. Franks**
**Louisiana Appellate Project**
**P. O. Box 220**
**Madisonville, LA 70447**
**(225) 485-0076**
**COUNSEL FOR APPELLANT:**
       **Asahel Harvin**

**COOKS, Judge.**

## FACTS AND PROCEDURAL HISTORY

On May 19, 1982, Defendant, Asahel Harvin, and a co-defendant, Roderick Smart, entered a taxi cab driven by James Mancil. Approximately halfway to their declared destination, Defendant asked Mancil to stop the car. Mancil was then shot by Defendant in the neck. Defendant and Smart then fled the taxi on foot. Mancil ultimately died from his injuries.

Defendant was indicted for first degree murder, a violation of La.R.S. 14:30, on August 3, 1982. Defendant was fifteen-years-old at the time of the offense. Defendant was found guilty of second degree murder, a violation of La.R.S. 14:30.1, and was subsequently sentenced to life in prison at hard labor without benefit of parole, probation, or suspension of sentence. Defendant appealed, and this court affirmed his conviction. *State v. Harvin*, 437 So.2d 983 (La.App. 3 Cir. 1983).

On November 19, 2012, Defendant filed a pleading titled "Combined Motions to Correct Illegal and Invalid Sentence Under LSA-C.Cr.P. Articles 882 and 872 and Order Setting Date for Contradictory Hearing" and a memorandum in support thereof. In his motion, Defendant alleged his sentence was illegal under the ruling in *Miller v. Alabama*, 567 U.S. 460, 132 S.Ct. 2455 (2012), which prohibited a sentencing scheme that mandated a life sentence without the possibility of parole for those under the age of eighteen at the time of the commission of a homicide. The trial court denied the motion, finding it was not timely filed. Defendant sought review of the trial court's ruling, and, on March 13, 2013, this court issued the following ruling in *State v. Harvin*, 13-4 (La.App. 3 Cir. 3/13/13) (unpublished opinion):

**WRIT GRANTED AND MADE PEREMPTORY:** More than thirty years after his conviction for second degree murder, Relator filed a motion to correct illegal sentence with the trial court. In his motion, Relator asked the district court to apply *Miller v. Alabama*, [567] U.S. [460], 132 S.Ct. 2455 (2012) to his case and grant him any relief available. The trial court denied the motion as being untimely filed.

Under La.Code Crim.P. art. 881.5, the court may correct an illegal sentence at any time. Thus, the trial court erred in denying the motion as being untimely filed. The district court's ruling is vacated, and the matter is remanded for consideration of and ruling on the merits.

Thereafter, a hearing on Defendant's motion was scheduled for June 11, 2013. However, on June 5, 2013, the State filed a motion to stay the proceedings, citing the pendency of a number of cases before this court and the Louisiana Supreme Court regarding the retroactivity of the decision in *Miller*, 567 U.S. 460. On June 11, 2013, the trial court granted a joint motion to continue and reset the matter for July 17, 2013. On July 15, 2013, the State filed a second motion to stay the proceedings, citing the Louisiana Supreme Court's writ grant in *State v. Tate*, 12-2763 (La. 4/19/13), 111 So.3d 1023. The proceedings were stayed on July 16, 2013. On November 5, 2013, the Louisiana Supreme Court found the decision in *Miller*, 567 U.S. 460, did not apply retroactively. *State v. Tate*, 12-2763 (La. 11/5/13), 130 So.3d 829, *cert. denied*, __ U.S. __, 134 S.Ct. 2663 (2014), *abrogated by Montgomery v. Louisiana*, __ U.S. __, 136 S.Ct. 718 (2016).

On June 15, 2015, the trial court scheduled an evidentiary hearing for July 7, 2015. However, defense counsel filed a motion to continue on June 29, 2015, noting that *Montgomery*, 136 S.Ct. 718, was pending on the docket of the United States Supreme Court. The motion was subsequently granted.

The United States Supreme Court issued a ruling in *Montgomery*, 136 S.Ct. 718, on January 25, 2016, finding the decision in *Miller*, 567 U.S. 460, announced a new substantive constitutional rule that was retroactive on state collateral review. As a result thereof, Defendant filed a "Motion and Order to Reopen a Pending

Motion to Correct an Illegal Sentence" on May 24, 2016. The matter was set for hearing on June 21, 2016. On the same date, Defendant also filed a pleading titled "Incorporated Motion & Memorandum to Correct Illegal Sentence Under LSA-C.Cr.P. Article 882 and Order Setting Date for Sentencing Hearing" and a "Supplemental and Incorporated Memorandum to Correct an Illegal Sentence." Therein, Defendant requested a new sentencing hearing, urging that he be resentenced to the maximum sentence provided for manslaughter at the time the offense was committed.

The State filed a motion to continue on June 14, 2016, and the motion was granted the following day. A motion to re-fix the hearing was filed by Defendant on August 17, 2016. Therein, Defendant alleged that, in light of the Louisiana Supreme Court's ruling in *State v. Montgomery*, 13-1163 (La. 6/28/16), 194 So.3d 606, the statutory provisions regarding prospective sentencing of juveniles were applicable to resentencing hearings, it was necessary for the trial court to determine whether he should be resentenced to life with eligibility for parole. The matter was set for hearing on September 20, 2016. Defendant filed a "Supplemental Memorandum Addressed to Remedy Under Miller v. Alabama" on September 19, 2016.

At a hearing held on September 20, 2016, the trial court resentenced the Defendant to life with benefit of parole. On October 10, 2016, Defendant filed a pro se notice of intent to seek supervisory writs. On March 2, 2017, this court issued the following ruling in *State v. Harvin*, 16-845 (La.App. 3 Cir. 3/2/17) (unpublished opinion):

> **WRIT GRANTED AND MADE PEREMPTORY:** Relator seeks review of the trial court's September 20, 2016 ruling resentencing Relator to life imprisonment with the possibility of parole. In light of *State ex rel. Hudson v. State*, 16-1731 (La. 1/9/17), [208] So.3d [882], this court considers Relator's notice of intent filed on October 10, 2016, a motion for appeal; as such, the matter is remanded to the trial court for further proceedings consistent herewith. The trial court is to

4

also consider the notice of intent as a motion to appeal, to grant Relator an appeal, to appoint Relator appellate counsel, and to order the preparation of an appellate record for the purposes of the appeal.

Defendant is now before this court by appeal asserting the trial court violated his due process rights when it imposed a sentence in violation of the United States Supreme Court's mandate to impose a proportionate sentence that offered a meaningful opportunity for release of an offender who committed a homicide as a juvenile and had demonstrated that he had rehabilitated himself. Defendant also contends the Louisiana Supreme Court was without authority to craft penal provisions not authorized legislatively. Further, he asserts the trial court failed to perform its duty as sentencer and assure that a proper and proportionate sentence was imposed at resentencing.

## ANALYSIS

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find there are no errors patent.

On appeal, Defendant contends the trial court violated his due process rights under both the United States Constitution and La.Const. art. 1, § 9 when it imposed a sentence in violation of the United States Supreme Court's mandate to impose a proportionate sentence that offered a meaningful opportunity for release of an offender who committed a homicide as a juvenile and had demonstrated that he had rehabilitated himself.

In *Miller*, 567 U.S. at 479, the United States Supreme Court held "the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders." The Court went on to state:

> [W]e do not consider Jackson's and Miller's alternative argument that the Eighth Amendment requires a categorical bar on life without parole for juveniles, or at least for those 14 and younger. But given all we have said in *Roper* [*v. Simmons*, 543 U.S. 551, 125 S.Ct. 1183 (2005)], *Graham* [*v. Florida*, 560 U.S. 48, 130 S.Ct. 2011 (2010)],

5

and this decision about children's diminished culpability and heightened capacity for change, we think appropriate occasions for sentencing juveniles to this harshest possible penalty will be uncommon. That is especially so because of the great difficulty we noted in *Roper* and *Graham* of distinguishing at this early age between "the juvenile offender whose crime reflects unfortunate yet transient immaturity, and the rare juvenile offender whose crime reflects irreparable corruption." *Roper*, 543 U.S., at 573, 125 S.Ct. 1183; *Graham*, 560 U.S., at 68, 130 S.Ct., at 2026–2027. Although we do not foreclose a sentencer's ability to make that judgment in homicide cases, we require it to take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison.

*Id.* at 479-80.

In *Montgomery*, 136 S.Ct. at 736 (emphasis added), the United States Supreme Court stated:

The Court now holds that *Miller* [*v. Alabama*, 567 U.S. 460, 132 S.Ct. 2455 (2012),] announced a substantive rule of constitutional law. . . . *Miller*'s conclusion that the sentence of life without parole is disproportionate for the vast majority of juvenile offenders raises a grave risk that many are being held in violation of the Constitution.

Giving *Miller* retroactive effect, moreover, does not require States to relitigate sentences, let alone convictions, in every case where a juvenile offender received mandatory life without parole. **A State may remedy a *Miller* violation by permitting juvenile homicide offenders to be considered for parole, rather than by resentencing them.** See, *e.g.*, Wyo. Stat. Ann. § 6–10–301(c) (2013) (juvenile homicide offenders eligible for parole after 25 years). Allowing those offenders to be considered for parole ensures that juveniles whose crimes reflected only transient immaturity—and who have since matured—will not be forced to serve a disproportionate sentence in violation of the Eighth Amendment.

Extending parole eligibility to juvenile offenders does not impose an onerous burden on the States, nor does it disturb the finality of state convictions. Those prisoners who have shown an inability to reform will continue to serve life sentences. The opportunity for release will be afforded to those who demonstrate the truth of *Miller*'s central intuition—that children who commit even heinous crimes are capable of change.

*Montgomery* was remanded to the Louisiana Supreme Court for further proceedings. In *Montgomery*, 194 So.3d at 607-09 (emphasis added), the Louisiana Supreme Court said:

To implement *Miller*'s "meaningful opportunity to obtain release" for those juveniles who commit murder but are not found to be irreparably corrupt, the Legislature in 2013 La. Acts 239 enacted La.C.Cr.P. art. 878.1 and La.R.S. 15:574.4(E). Article 878.1 requires the District Court to conduct a hearing "[i]n any case where an offender is to be sentenced to life imprisonment for a conviction of first degree murder (R.S. 14:30) or second degree murder (R.S. 14:30.1) where the offender was under the age of eighteen years at the time of the commission of the offense . . . to determine whether the sentence shall be imposed with or without parole eligibility pursuant to the provisions of R.S. 15:574.4(E)." La.R.S. 15:574.4(E) then provides the conditions under which any person serving a sentence of life imprisonment for first or second degree murder committed under the age of 18 can become parole eligible, provided a judicial determination has been made the person is entitled to parole eligibility pursuant to Article 878.1. **This court found in *State v. Tate*, 12–2763, pp. 19–20 (La. 11/5/13), 130 So.3d 829, 843, that Article 878.1 applies prospectively to those offenders who are to be sentenced.**

During the 2016 legislative session, legislation was proposed to address those cases in which persons that committed murder as juveniles and were sentenced to life imprisonment without parole eligibility before *Miller* [*v. Alabama*, 567 U.S. 460, 132 S.Ct. 2455 (2012),] was decided, who the Supreme Court determined in *Montgomery* [*v. Louisiana*, __ U.S. __, 136 S.Ct. 718 (2016),] must be resentenced in accordance with the principles enunciated in *Miller*. However, the Legislature ultimately failed to take further action in the last few moments of the legislative session regarding sentences of life without parole for juvenile homicide offenders. *See* HB 264 of the 2016 Regular Session. Therefore, **in the absence of further legislative action, the previously enacted provisions should be used for the resentencing hearings that must now be conducted on remand from the United States Supreme Court to determine whether** Henry Montgomery, and other **prisoners** like him, **will be granted or denied parole eligibility**.

Certainly, the legislature is free within constitutional contours to enact further laws governing these resentencing hearings but **in the absence of such legislation, this court must provide guidance to the lower courts on the pending cases**. *See Gillam v. Cain*, No. 14–2129 (E.D.La.5/31/16) (slip op.), 2016 WL 3060254 ("the state trial court is ordered to resentence Petitioner in conformity with *Miller v. Alabama*, [567] U.S. [460], 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012), within ninety (90) days or, in the alternative, to release him from confinement"); *Palmer v. Cain*, No. 03–2983 (E.D.La.5/5/16) (slip op.), 2016 WL 2594753 ("the state trial court is ordered to resentence him in conformity with *Miller v. Alabama*, [567] U.S. [460], 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012), within one-hundred twenty (120) days from entry of judgment or release him from confinement."); *Tate v. Cain*, No. 14–2145 (E.D.La.4/21/16) (slip op.), 2016 WL 3005748 ("The petitioner shall be released if no such hearing is held within 90 days of this Order."); *Trevathan v. Cain*, No. 15–1009

7

(E.D.La.4/11/16) (slip op.), 2016 WL 1446150 ("the state court is ORDERED to resentence him in conformity with *Miller v. Alabama*, [567] U.S. [460], 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012), within ninety (90) days or, in the alternative, to release him from confinement"). **In providing this guidance, we note that existing legislative enactments are applicable, either directly or by analogy**.

In La.C.Cr.P. art. 878.1(B), the Legislature addressed the factors to be considered to determine whether the sentence should be imposed with or without parole eligibility:

> At the hearing, the prosecution and defense shall be allowed to introduce any aggravating and mitigating evidence that is relevant to the charged offense or the character of the offender, including but not limited to the facts and circumstances of the crime, the criminal history of the offender, the offender's level of family support, social history, and such other factors as the court may deem relevant. Sentences imposed without parole eligibility should normally be reserved for the worst offenders and the worst cases.

This provision does not purport to provide an exhaustive list of considerations but instead authorizes the District Court to consider other factors the court may deem relevant to its determination. Previously, and by way of example, in *State v. Williams*, 01–1650 (La.11/1/02), 831 So.2d 835, this Court noted that the United States Supreme Court left to the states the task of developing appropriate ways to enforce the constitutional restriction against execution of the intellectually disabled and further noted that Louisiana had not yet directly legislatively implemented *Atkins v. Virginia*, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002). Absent a legislative implementation of *Atkins*, the *Williams* court drew upon other enactments to establish a procedure until the legislature could act. Similarly, although the Legislature was unable to enact legislation during the 2016 Regular Session, it has provided general sentencing guidelines in La.C.Cr.P. art. 894.1, which the District Court may deem relevant in accordance with La.C.Cr.P. art. 878.1(B). Other states have also legislatively implemented *Miller*. For example, Florida has enumerated the following factors to be considered in sentencing a juvenile to life imprisonment:

> (a) The nature and circumstances of the offense committed by the defendant.
> (b) The effect of the crime on the victim's family and on the community.
> (c) The defendant's age, maturity, intellectual capacity, and mental and emotional health at the time of the offense.
> (d) The defendant's background, including his or her family, home, and community environment.

(e) The effect, if any, of immaturity, impetuosity, or failure to appreciate risks and consequences on the defendant's participation in the offense.
(f) The extent of the defendant's participation in the offense.
(g) The effect, if any, of familial pressure or peer pressure on the defendant's actions.
(h) The nature and extent of the defendant's prior criminal history.
(i) The effect, if any, of characteristics attributable to the defendant's youth on the defendant's judgment.
(j) The possibility of rehabilitating the defendant.

Fla. Stat. § 921.1401(2) (2014). The District Court here may deem considerations such as these to be relevant as well under the authority of Article 878.1(B). Finally, the District Court must also be mindful of the Supreme Court's directive in *Miller*, 132 S.Ct. at 2469, "to take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." In making its ultimate determination regarding parole eligibility, the District Court is further directed to issue reasons indicating the factors it considered to aid in appellate review of the sentence imposed after resentencing.

Defendant argues the Louisiana Legislature has consistently failed to enact penalty statutes that satisfy the directives in *Miller*, 567 U.S. 460. Defendant points out there has been no amendment to the second degree murder statute, and that statute mandates a sentence of life imprisonment without the possibility of parole without reference to age. Defendant contends that because La.R.S. 14:30.1 has not been amended, there is no statute under which a valid sentence for second degree murder can be imposed.

Rather than amending La.R.S. 14:30.1, the Louisiana Legislature enacted La.R.S. 15:574.4(E) and La.Code Crim.P. art. 878.1 in 2013, the year after the *Miller* decision. Louisiana Revised Statutes 15:574(E) was amended in 2017 to reduce parole eligibility time from thirty-five to twenty-five years imprisonment. However, Defendant contends that the addition of parole eligibility and access to the Parole Board after twenty-five years is not the equivalent of a meaningful opportunity for release from incarceration and does not satisfy *Miller*. Further, the

Louisiana Supreme Court has deprived juveniles of the proportionality review mandated in *Miller* by delegating the "sentencing choice" to the Parole Board.

Defendant claims the Louisiana Supreme Court in *Montgomery*, 194 So.3d 606, said the only issue to be resolved in a *Miller* hearing was whether the inmate would be granted or denied parole eligibility, which he alleges is a finding the United States Supreme Court did not make in *Miller*, 567 U.S. 460. He further argues the Louisiana Supreme Court created substantive law when it set forth "sentencing possibilities" in *Montgomery*, 194 So.3d 606, which were not and have not been authorized by the legislature. Defendant alleges the legislature's power to set forth possible sentencing choices cannot be delegated even when it fails to act. Thus, Defendant argues any interim rules created by the Louisiana Supreme Court are unenforceable because they were created without authority. Defendant asserts the sentencing scheme set forth in *Montgomery* allows for disproportionate sentencing by a non-juridical entity in conflict with *Miller*, 567 U.S. 460, thereby depriving him of due process. However, Defendant does acknowledge the sentence imposed by the trial court in his case was within the parameters established by the Louisiana Supreme Court in *Montgomery*, 194 So.3d 606.

In support of his argument that the Louisiana Supreme Court may not establish interim rules and did not have authority to mandate a limited set of possibilities for a trial court at a *Miller/Montgomery* hearing, Defendant cites *State v. Rome*, 96-991 (La. 7/1/97), 696 So.2d 976. In that case, the Louisiana Supreme Court stated:

> One of the traditional, inherent and exclusive powers of the judiciary is the power to sentence. *State v. LeCompte*, 406 So.2d 1300, 1311 (La.1981) (on rehearing). After a defendant is convicted of a crime, the determination of his sentence is within the sound discretion of the trial judge. *State v. Jackson*, 298 So.2d 777, 780 (La.1974). However, the trial judge's sentencing discretion is not unbridled, as the legislative branch of government is free to decide what constitutes a crime as well as "what punishments shall be meted out by a court after the judicial ascertainment of guilt." *State v. Normand*, 285 So.2d

210, 211 (La.1973). Therefore, the fixing of penalties is purely a legislative function, but the trial judge has the discretion to determine the appropriate sentence within the sentencing range fixed by the legislature.

*Id.* at 978 (footnotes omitted). Defendant then notes that La.R.S. 15:321(A) provides:

The enactment of statutes defining criminal offenses and the establishment of ranges of penalties for those offenses is a matter of substantive law solely within the prerogative of the legislature. The determination and imposition of sentence in particular cases is generally the function of the sentencing court, subject to appellate review and to mandatory sentences provided by law.

Further, La.Const art. 2, § 2 specifies the judicial branch is prohibited from exercising the power assigned to the legislative branch. Defendant contends that "Louisiana's failure to act" resulted in a violation of his due process rights.

Defendant argues because no legal sentence is set out in La.R.S. 14:30.1 and the legislature has failed to act, he should have been resentenced to the next lesser included responsive verdict of manslaughter. Thus, Defendant asserts the appropriate action would have been to follow the decision in *State v. Craig*, 340 So.2d 191 (La.1976). In *Craig*, the defendant had been convicted of aggravated rape, which carried a mandatory sentence of death. The Louisiana Supreme Court held that, since the mandatory death penalty for first degree murder had been found unconstitutional in *Roberts v. Louisiana*, 428 U.S. 325, 96 S.Ct. 3001 (1976), the mandatory death penalty for aggravated rape was likewise unconstitutional. At the time the rape was committed, the legislature had abrogated the responsive verdict of guilty without capital punishment. Therefore, the appropriate remedy to correct the defendant's illegal sentence was to remand for resentencing to the most serious penalty for the next lesser responsive verdict, simple rape. Defendant acknowledges a similar argument was rejected by the Louisiana Supreme Court in *State v. Shaffer*, 11-1756 (La. 11/23/11), 77 So.3d 939. However, he declares the supreme court did not expressly overrule *Craig* in *Shaffer*.

11

In *Shaffer*, 77 So.3d 939, the Louisiana Supreme Court addressed the claims of three relators, all juvenile offenders who had been convicted of aggravated rape and given life sentences, who asserted that their sentences violated the pronouncement in *Graham v. Florida*, 560 U.S. 48, 130 S.Ct. 2011 (2010), that the Eighth Amendment precluded sentencing a juvenile to life imprisonment without the possibility of parole for commission of a non-homicide offense. One defendant had been sentenced to life imprisonment with an express restriction against parole eligibility. The two others had received life sentences without express restrictions on parole eligibility. Relators argued that the appropriate remedy in light of the *Graham* decision was to resentence them in accordance with the penalty provision for the next lesser and included responsive verdict of attempted aggravated rape. The *Shaffer* court concluded that *Graham* required neither the immediate release of relators, nor a remedy that would guarantee their immediate release based on credit for time served. Rather, *Graham* required only that the state provide a "meaningful opportunity" for relators and other similarly situated persons to obtain release as part of the rehabilitative process. *Shaffer*, 77 So.3d at 942. The *Shaffer* court found that under *Graham*, 560 U.S. 48, the Eighth Amendment prohibited the state from enforcing against relators and other similarly situated persons the commutation provisions of La.R.S. 15:574.4(A)(2) and La.R.S. 15:574.4(B), both of which required commutation of a life sentence to a fixed term before parole consideration. The *Shaffer* court went on to reject the suggestion that the proper remedy was resentencing under a lesser and included offense and held the appropriate remedy was to delete the restrictions on parole eligibility.

The *Shaffer* court noted, in footnote six of its opinion:

> This Court is aware that in the past session, the legislature addressed, but did not resolve, the *Graham* issue. 2011 House Bill 115 provided that an inmate serving life sentences for a nonhomicide crime committed as a juvenile would become eligible for parole consideration after serving 35 years of his sentence, subject to a

12

variety of special conditions. However, House Bill 115 failed final passage and the legislature has by concurrent resolution directed the Louisiana Law Institute to convene a task force to evaluate Louisiana law for compliance with *Graham* [*v. Florida*, 560 U.S. 48, 130 S.Ct. 2011 (2010),] and to report back with its findings and recommendations by January 1, 2012. Thus, our decision in relators' cases is an interim measure (based on the legislature's own criteria) pending the legislature's response to *Graham*. *Cf. State v. Williams*, 01–1650, pp. 32–33 (La.11/1/02), 831 So.2d 835, 861 (adopting as an interim measure procedure for determining whether a capital defendant is mentally retarded and so exempt from capital punishment under *Atkins v. Virginia*, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002), pending the legislature's own response to the *Atkins* decision, *see* La.C.Cr.P. art. 905.5.1, 2003 La. Acts 698).

*Shaffer*, 77 So.3d. at 943, n.6.

Defendant further argues the same issue was rejected in *State v. Graham*, 14-1769 (La.App. 1 Cir. 4/24/15), 171 So.3d 272, *writ denied*, 15-1028 (La. 4/8/16), 191 So.3d 583, and *State v. Brown*, 51,418 (La.App. 2 Cir. 6/21/17), __ So.3d __.  However, the issue at hand has not been addressed by this court.  In *Graham*, 171 So.3d 272, the defendant was convicted of second degree murder and sentenced to life imprisonment without the benefit of parole.  While the case was pending in the Louisiana Supreme Court, the decision in *Miller*, 567 U.S. 460, was rendered.  The supreme court remanded the matter to the district court to conduct a sentencing hearing in accordance with the principles enunciated in *Miller*.  On remand, the defendant was resentenced to life imprisonment at hard labor with the benefit of parole.  On appeal, the first circuit rejected the defendant's claim that he should have been resentenced to the penalty for next available responsive verdict of manslaughter, noting the only other sentence available to the defendant under *Miller* was life imprisonment with parole.  *Graham*, 171 So.3d at 281.  In *Brown*, 51,418, p. 9, the second circuit stated:

> [O]ur circuit courts have repeatedly rejected the claim that, in light of *Miller* [*v. Alabama*, 567 U.S. 460, 132 S.Ct. 2455 (2012)], juvenile homicide defendants should be sentenced under the manslaughter statute. *State v. Williams*, 50,060 (La. App. 2 Cir. 9/30/15), 178 So.3d 1069, *writ denied*, 2015-2048 (La. 11/15/16), 209 So.3d 790; *State v. Calhoun*, [51,337 (La.App. 2 Cir. 5/17/17), 222 So.3d 903]; *State v.*

*Plater*, [51,338 (La.App. 2 Cir. 5/17/17), 222 So.3d 897]; *State v. Graham*, 2014-1769 (La.App. 1 Cir. 4/24/15), 171 So.3d 272, *writ denied*, 2015-1028 (La. 4/8/16), 191 So.3d 583; *State v. Dupre*, 2016-1352 (La.App. 1st Cir. 4/12/17), 2017 WL 1376526; *State v. Williams*, 2015-0866 (La. App. 4 Cir. 1/20/16), 186 So.3d 242, *writ denied*, 2016-0332 (La. 3/31/17), 217 So.3d 358; *State v. Jones*, 2015-157 (La. App. 5 Cir. 9/23/15), 176 So.3d 713.

The State notes that in *Montgomery*, 136 S.Ct. 718, the United States Supreme Court declared that a state could remedy a *Miller* violation by permitting a juvenile homicide offender to be considered for parole rather than by resentencing. The State further points to La.Code Crim.P. art. 3, which states: "Where no procedure is specifically prescribed by this Code or by statute, the court may proceed in a manner consistent with the spirit of the provisions of this Code and other applicable statutory and constitutional provisions."

The State contends the sole question to be answered in a *Miller* hearing is whether Defendant will receive parole eligibility, and Defendant is not entitled to be resentenced to the responsive verdict of manslaughter. The State points out that Defendant's argument has been rejected in several cases. In *State v. Dupre*, 16-1352, p. 5 (La.App. 1 Cir. 4/12/17) (unpublished opinion) (footnote omitted), the first circuit held:

> Thus, under [*State v.*] *Shaffer*[, 11-1759 (La. 11/23/11), 77 So.3d 939,] and *Graham* [*v. Florida*, 560 U.S. 48, 130 S.Ct. 2011 (2010)], the appropriate remedy for a minor sentenced to life imprisonment without parole for a nonhomicide crime is to let stand the life sentence, but delete the restriction on parole eligibility. See *State v. Graham*, [14-1769 (La.App. 1 Cir. 4/24/15),] 171 So.3d [272] at 280[, *writ denied*, 15-1028 (La. 4/8/16), 191 So.3d 583].
>
> Our courts used the same approach as that taken in the *Graham* line of cases when applying *Miller* [*v. Alabama*, 567 U.S. 460, 132 S.Ct. 2455 (2012),] to sentencing juveniles for homicide offenses. See e.g., *State v. Fletcher*, 49,303 (La. App. 2d Cir. 10/1/14), 149 So.3d 934, 941-42, *cert. denied*, — U.S. —, 136 S.Ct. 254, 193 L.Ed.2d 189 (2015). Thus, once a defendant has been afforded a hearing pursuant to La. C.Cr.P. art. 878.1, either a sentence of life imprisonment with parole or a sentence of life imprisonment without parole is proper and not unconstitutional under *Miller*. Accordingly, the defendant was not entitled to be sentenced to the next available responsive verdict of manslaughter.

The State also cites *Brown*, ___ So.3d ___, which was cited by the Defendant; *State v. Keith*, 51,389 (La.App. 2 Cir. 6/21/17), 223 So.3d 767; *State v. Calhoun*, 51,337 (La.App. 2 Cir. 5/17/17), 222 So.3d 903; *State v. Shaw*, 51,325 (La.App. 2 Cir. 5/17/17), 223 So.3d 607; *State v. Plater*, 51,338 (La.App. 2 Cir. 5/17/17), 222 So.3d 897[1]; *State v. Sumler*, 51,324 (La.App. 2 Cir. 5/2/17), 219 So.3d 503; and *State v. Kelly*, 51,246 (La.App. 2 Cir. 4/5/17), 217 So.3d 576.

In *Keith*, 223 So.3d at 771, the second circuit addressed *Craig*, 340 So.2d 191, stating:

> [*State v.*] *Craig*[, 340 So.2d 191 (La.1976),] eliminated the possibility of a mandatory death sentence entirely, necessitating vacating those now illegal sentences and resentencing to the most severe sentence for the next lesser included offense. Conversely, *Miller v.* [*Alabama*, 567 U.S. 460, 132 S.Ct. 2455 (2012),] did not eliminate the possibility of a life sentence for juvenile homicide offenders; it simply held sentencing to life imprisonment at hard labor, without parole eligibility, is unconstitutional if the defendant is denied a meaningful opportunity to present mitigating factors—such as, the attendant qualities of youth.

The court went on to find that "*Craig* relief" was inapplicable to the defendant, citing *Graham*, 560 U.S. 48, and *Shaffer*, 77 So.3d 939. *Keith*, 223 So.3d at 771.

In *Calhoun*, 222 So.3d 903, the seventeen-year-old defendant was sentenced to life with parole eligibility for first degree murder. In addressing various claims by the defendant on appeal, the second circuit stated:

> This sentence is not illegal. He received the mandatory minimum sentence available under *Miller*[ *v. Alabama*, 567 U.S. 460, 132 S.Ct. 2455 (2012)], La. R.S. 14:30, and La. C. Cr. P. art. 878.1. As this Court noted in [*State v.*] *Fletcher*, [49,303 (La.App. 2 Cir. 10/1/14), 149 So.3d 934, *writ denied*, 14-2205 (La. 6/5/15), 171 So.3d 945, *cert. denied*, __ U.S. __, 136 S.Ct. 254 (2015),] the legislature was not required to amend the murder statutes to provide for sentencing of juvenile homicide defendants. The legislature designed an adequate solution to *Miller* by creating statutes relating to parole eligibility for juvenile homicide defendants which are to be read in conjunction with the murder statutes. He has a chance at parole, but he will have to earn it. This scheme is reasonable and satisfies *Miller*, *supra*.

---

[1]The State incorrectly lists this case as *State v. Parker*.

15

*Id.* at 907.

In *Shaw*, 223 So.3d 607, 613, the second circuit stated:

> Eligibility for parole is the sole question to be answered in a *Miller* hearing; and, accordingly, there is no consideration of whether there should be a downward departure from the mandatory sentence of life imprisonment at hard labor. Rather, the trial court considers only whether that mandatory sentence should include parole eligibility.

The court went on to find the defendant's claim that he should be sentenced to a lesser-included responsive verdict was without merit.

Prior to the decisions in *Montgomery*, 136 S.Ct. 718, and *Montgomery*, 194 So.3d 606, the Louisiana Legislature enacted La.Code Crim.P. art. 878.1 and La.R.S. 15:574.4(E). In *Tate*, 130 So.3d at 844 n.6 (emphasis added), the Louisiana Supreme Court found these provisions did not apply retroactively and, in footnote five of the decision it discussed the legislature's intent when enacting these provisions in 2013:

> Evidence of legislative intent further supports our interpretation. In the House Committee on Criminal Justice, Pete Adams, Executive Director of the Louisiana District Attorneys Association, and Dana Kaplan, Executive Direct of the Juvenile Justice Project of Louisiana, testified the bill was a carefully negotiated compromise and, as part of that compromise, the bill was written to apply prospectively only**, leaving the question of *Miller's* retroactivity to the courts**. Thus, Pete Adams testified: "One of the issues that is not addressed in the bill that we're concerned about is retroactivity. We agreed not to address this in the bill. We believe that the statute on its face is prospective only but of course the courts will make that decision whether they are constitutionally required to be applied retroactively. **If the courts decide that the law should be applied retroactively, that is for those already in jail, then this statute will be the vehicle by which those already in jail would gain access.** I would just kind of conclude there." Dana Kaplan concurred: "We also concur with the decision to not have the legislation comment on retroactivity because that's a matter that the courts themselves will decide." These comments were then endorsed by the bill's primary author, Representative Chris Hazel.

In *State v. Doise*, 15-713, pp. 9-10 (La.App. 3 Cir. 2/24/16), 185 So.3d 335, 342, *writ denied*, 16-546 (La. 3/13/17), 216 So.3d 808, this court addressed the defendant's claim that the statutory scheme implemented by the Louisiana

Legislature in response to *Miller*, 567 S.Ct. 460, in 2013 was unconstitutional, stating:

> In his brief, the Attorney General argues that he fails to see how life with the possibility of parole is a permissible alternative for juveniles who have committed *non-homicide* offenses but is not a permissible alternative for juveniles who have committed *homicide* offenses. We agree. Under *Graham*, a juvenile who commits a non-homicide offense punishable by life imprisonment *must* be *eligible* for parole. *Graham*[ *v. Florida*,] 560 U.S. 48, 130 S.Ct. 2011 [(2010)]. However, as the Louisiana Supreme Court held in *Shaffer*, the juvenile may not be *released* on parole unless the Board of Parole decides to release him. [*State v.*] *Shaffer*, [11-1756 (La. 11/23/11),] 77 So.3d 939. Thus, in reality, a juvenile who commits a non-homicide offense punishable by life in Louisiana is only promised the possibility of being released on parole. It stands to reason that a juvenile who commits a *homicide* offense punishable by life imprisonment should be granted no greater relief. As the Attorney General points out, if the mere possibility of being released on parole is sufficient to satisfy the mandatory parole eligibility established in *Graham* for juvenile non-homicide offenders, the mere possibility of being released on parole is more than sufficient to satisfy the chance of parole eligibility after a hearing established in *Miller*[, 567 U.S. 460,] for juvenile homicide offenders. As the Louisiana Supreme Court held in *Shaffer* regarding *Graham*, the mere access to the Board of Parole's consideration satisfies the mandates of *Miller*.

In *State v. Fletcher*, 49,303 (La.App. 2 Cir. 10/1/14), 149 So.3d 934, *writ denied*, 14-2205 (La. 6/5/15), 171 So.3d 945, *cert. denied*, __ U.S. __, 136 S.Ct. 254 (2015), the defendant complained the legislature failed to amend La.R.S. 14:30.1 to comply with *Miller*'s prohibition on a mandatory life sentence without the possibility of parole for juveniles convicted of murder. He further argued that La.Code Crim.P. art. 878.1 and La.R.S. 15:574.4(E) did not comply with *Miller*, 567 U.S. 460. In addressing the defendant's claims, the second circuit stated:

> [T]he *Miller* court was presented with an opportunity to categorically declare that no juvenile murderer shall be imprisoned without benefit of parole, but it specifically refused to do so. The Supreme Court plainly recognized that the circumstances of some murders and the characters of some juvenile killers would warrant the imposition of the "harshest possible penalty," and it gave the sentencer latitude to respond appropriately to those situations.
>
> The Louisiana legislature promptly addressed the *Miller* directive against mandatory life-without-parole sentences for juvenile killers by devising a sentencing procedure which would require that a

trial court sentencing a youthful offender review all pertinent factors before determining whether parole eligibility was warranted. By its very application to only murderers under the age of 18, the provisions of La. C. Cr. P. art. 878.1 mandating a sentencing hearing at which the defense will be given an opportunity to present mitigating factors— which obviously include the defendant's age as an important part of his social history—satisfy *Miller*'s requirement that mitigating factors favoring a juvenile killer be heard in a proceeding held for that purpose. Furthermore, we find that *Miller* [*v. Alabama*, 567 U.S. 460, 132 S.Ct. 2455 (2012),] does not require deferral to the distant future of the determination of whether to allow parole eligibility.

Contrary to the defendant's claim, the legislature was not required to amend the second degree murder statute itself to provide for sentencing of juvenile killers. As noted by the attorney general, life without parole is still a constitutionally acceptable sentence for adult killers and it is not a prohibited sentence for *all* juvenile killers. Our legislature carefully designed an adequate solution by adding a new statute pertaining to parole eligibility for juvenile killers which is to be read in conjunction with the first and second degree murder statutes. In the event that the trial court imposes a life sentence with parole eligibility, La. R.S. 15:574.4(E) provides conditions which must be satisfied before the defendant can apply to the parole board for parole consideration.

*Id.* at 942. The *Fletcher* court cited *State v. Baker*, 14-222 (La.App. 1 Cir. 9/19/14), 154 So.3d 561, *writ denied*, 14-2132 (La. 5/15/15), 170 So.3d 159, wherein the first circuit rejected the defendant's argument that the trial court should have quashed the indictment on the basis that *Miller*, 567 U.S. 460, invalidated the mandatory penalty provision of La.R.S. 14:30.1, thereby prohibiting him from being sentenced as an adult in district court to life without parole. In rejecting the defendant's claims and finding the trial court complied with *Miller*, the first circuit stated: "Moreover, if *Miller* invalidated the penalty provision found in LSA–R.S. 14:30.1, our Louisiana Supreme Court has previously held that the invalidation of a penalty provision does not render an entire statute unconstitutional." *Baker*, 154 So.3d at 566.

In *Montgomery*, 136 S.Ct. at 736, the United States Supreme Court stated: "A State may remedy a *Miller* violation by permitting juvenile homicide offenders to be considered for parole, rather than by resentencing them." In his concurrence

18

in *Montgomery*, 194 So.3d 606, 610, Justice Crichton wrote: "*Eligibility vel non* is the sole question to be answered in a *Miller* hearing. If parole eligibility is not denied by the district court, future prospects for parole will depend on the prerequisites of La. R.S. 15:574.4(E) and on the ultimate determinations of the Parole Board."

District courts are bound to follow the decision in *Montgomery*, 194 So.3d 606, as it was the last expression of law by the United States Supreme Court. As noted Defendant argues that compliance with the dictates in *Miller* requires the trial court to resentence him to the next lesser offense in this case as the state supreme court did in *Craig*, 340 So.2d 191. However, as earlier set forth, in *Shaffer*, 77 So.3d 939, the Louisiana Supreme Court rejected the suggestion that the proper remedy was resentencing under a lesser and included offense and held the appropriate remedy was to delete the provisions on parole eligibility. We note as well, in *State v. Straub*, 12-270, pp. 5-6 (La.App. 1 Cir. 9/21/12), 111 So.3d 38, 41, the first circuit stated:

> Although the *Shaffer* court did not expressly overrule *Craig* (wherein the Louisiana Supreme Court remanded for resentencing for aggravated rape to the most serious penalty for the next available responsive verdict, which is attempted aggravated rape), it is clear that the Court considered and rejected the *Craig* remedy, albeit without explanation. [*State v.*] *Shaffer*, [11-1756 (La. 11/23/11),] 77 So.3d [939] at 941 n. 3.

*See also State v. Walder*, 12-51, p. 6 (La.App. 1 Cir. 9/24/12), 104 So.3d 137, 141, *writ denied*, 12-2534 (La. 4/19/13), 111 So.3d 1032. Additionally, *Craig* has not been applied in any *Miller/Montgomery* case cited by the parties or found by this court.

The trial court's judgment resentencing Defendant to life imprisonment *with benefit of parole eligibility* complies with the last expression of the Unites States Supreme court in *Miller* and the Louisiana Supreme Court's interpretation of that

19

holding in *Montgomery*. Therefore, we affirm Defendant's sentence of life imprisonment with eligibility for parole.

**AFFIRMED.**